# EXHIBIT 3



FILED
December 04, 2024 4:05 PM
Office of the Prothonotary
Washington County, Pennsylvania

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| JAY AND SABINA CONZEMIUS,<br>335 Rocky Ridge Road<br>Bethel Park, PA 15102 | CIVIL DIVISION<br><br>No.    2024-5215 |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| NVR, INC.<br>d/b/a RYAN HOMES<br>100 Ryan Court, PGH, PA  15205<br>(per fictitious name registration) | |
| Defendant. | Filed on Behalf of:<br>Jay and Sabina Conzemius, Plaintiffs<br><br>Counsel of Record for This Party:<br><br>Rebecca A. Bowman, Esq., P.E.<br>PA Id # 47729<br><br>114 Aston Court, McMurray, PA  15317-2745<br>Tele:   724-941-1532<br>E-mail: RBowmanEsq@aol.com<br><br><br>**A TRIAL BY JURY IS DEMANDED.** |

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| JAY AND SABINA CONZEMIUS<br>335 Rocky Ridge Road, BP, PA  15102<br>　　　　　Plaintiffs,<br>　　v.<br>NVR, INC. d/b/a RYAN HOMES<br>100 Ryan Court, PGH, PA  15205<br>(per fictitious name registration)<br>　　　　　Defendant. | CIVIL DIVISION<br><br>No.   2024-5215<br><br><br><br><br>**COMPLAINT** |

And, now come Jay and Sabina Conzemius, by and through their attorney, Rebecca A. Bowman, Esq., P.E., D.F.E. (NAFE #1153), bringing this complaint against the defendant above-named and for causes of action complain and say:

1.　　Plaintiffs are husband and wife, both adults, and, by fee simple deed, the owners of the real property with an address of 335 Rocky Ridge Road, Bethel Park (mailing address only), Peters Township, Washington County, Pennsylvania 15102, with a tax parcel identifier of 540-002-28-00-0017-00.

2.　　Defendant, a Virginia corporation, was the builder and seller of new construction on the property in 2013, transferred to Plaintiffs in January 2013 by Instrument No. 201302938.

3.　　A previous dispute between the parties was resolved by settlement in 2014 with a release of matters related to that dispute.  "However, Purchaser is not precluded from pursuing claims related to material after-discovered issues or pursuing claims under equipment and appliance warranties which NVR is contractually required to assign to Purchaser."[1]

4.　　Unfortunately, in 2017, Plaintiffs discover new, not-previously-existing, and dramatic cracks in the foundation walls and elsewhere in the home.

---

[1] Excerpt from settlement agreement in 2014.

5. Plaintiffs immediately raised these cracks to the attention of Defendant.

6. Defendant had the property inspected by the engineers of their choice, including removal of all materials related to partial finishing of the basement by Plaintiffs.

7. Plaintiffs agreed to the installation of crack monitors and to periodic monitoring.

8. The parties agreed to hold any legal action in abeyance until the crack monitoring was complete and analysis of the causes of the suddenly developing cracks.

9. When Plaintiffs discovered that the expert reports provided by Defendant's engineers provided no explanation of the causes of the suddenly developing cracks, Plaintiffs felt obliged to obtain an expert report of their own.

10. With the experts' reports in-hand, the parties met several times to attempt a resolution, but little progress was made since there was no explanation of why cracks would suddenly develop in a nearly-5-year-old home and, without that information, Plaintiffs could have no confidence that any remediation plan would be successful on a long-term basis.

11. Various settlement proposals were put forth by each side, but each settlement proposal was only partially acceptable.

12. Defendant appeared to prefer to address issues piecemeal, and three of the issues have been dealt with.

13. Specifically, crown molding was installed on the second floor to cosmetically conceal the damage resulting from what the Defendant called "truss lifting."

14. Unfortunately, while truss lifting is the consequence of inadequate attic insulation, Defendant failed to remedy the underlying issue.

15. In addition, after repeated failed attempts to remediate sagging floors and the resultant cracks in walls, Defendant installed blocking between the basement joists and the resultant cracking was repaired.

16. Further, Defendant corrected errors in the roof drainage over the mudroom.

17. However, Defendant failed to fully investigate or remediate damage resulting from the errors in the roof drainage over the mudroom, so that issue remains open.

18. Although Plaintiffs reluctantly gave verbal consent for some sort of sealing compound to be injected into the new-as-of-2017 cracks in the foundation walls in 2022 and confirmed that consent in writing on July 23, 2023, Defendant has taken no further action.

19. Furthermore, subsequent to that sealing activity, related activities must occur of restoration of the basement finishing that was destroyed and repair/repointing/replacement of damaged brick, although the parties have not agreed on the scope or methodology of those repairs.

20. Both this sequencing and these pending activities were acknowledged by Defendant on August 3, 2023, although, as noted in Paragraph 19, the parties have not agreed on the scope or methodology of those repairs.

21. Additionally, the separation and/or sinking causing the foundation cracks have had the additional result of forcing the sliding glass doors out of square, resulting in a complete security failure – the latch does not latch and the lock does not lock, but Defendant has consistently refused to address this issue.

22. In addition to the out-of-plumb issue, Defendant placed the two sliders in the incorrect locations and hung the incorrect basement slider incorrectly.

23. Specifically, the two sliders were to align, one above the other, centered on that section of the rear wall with the latch/lock on the left side (as seen from the interior), but

Defendant staggered the sliders and centered neither and incorrectly installed the incorrect slider in the basement with the latch/lock on the right side (as seen from the interior), precluding the planned installation of a cabinet and countertop.

24. Since the 2014 settlement, the utility meter has pulled away from the house, and Defendant has acknowledged the obligation to remediate this serious safety situation but has taken no action.

25. Since the 2014 settlement, the paint on the ceilings in the two upstairs bathrooms have developed bubbling, cracking, and peeling down to the raw wallboard.

26. Defendants have asserted that the installed ventilation fans are "per spec" and functioning and have declined to address or remediate the matter.

27. These bathrooms have *de minimus* loads – each just daily bathing by two people, so whether the installed ventilation fans are "per spec" or not, they appear to be inadequate.

28. Not only were Plaintiffs never provided with the specification so that they could have an expert evaluate their adequacy, Plaintiffs have no independent capacity to evaluate their adequacy.

29. Alternatively, in consultation with the specified paint source, Sherwin Williams, it is likely that Defendant installed damaged (i.e. damp) or defective wallboard or wallboard that was not for moist settings.

30. Whether the issue is inadequate ventilation or installation of damaged/defective/improper wallboard, the issue belongs to the Defendant and is in no way a maintenance responsibility of Plaintiffs.

31. The parties have agreed that Defendant shall provide an extended and assignable structural warranty for the foundation and any associated damage, but there has not been an agreement on the duration of that extended and assignable structural warranty.

32. There remain punchlist and open items from the original construction, which were not addressed in the 2014 settlement, including installation of the incorrect master bath tub, installation of the incorrect kitchen stovetop, installation of the incorrect and nonfunctioning fireplace, the defective and nonfunctioning installation of a used replacement fireplace (whether a gas problem, an electrical problem, an igniter problem, or an insulation problem), all of which Plaintiffs had been charged extra for, and misplaced and mis-installed sliding doors in the morning room as per Paragraph 21 and 22 above.

33. Defendant has refused to address these issues.

34. Plaintiffs are willing to permit Defendant to accomplish all of these items.

35. However, Plaintiffs have been forced to live in a state of constant disruption and upheaval for more than a decade.

36. Accordingly, if Defendant wishes to accomplish all of these items, Plaintiffs ask that this Court impose a deadline.

37. Furthermore, in light of this cluster of issues, Plaintiffs ask that this Court require that Defendant reimburse Plaintiffs for an independent inspector of their choosing.

38. Alternatively, if Defendant does not wish to accomplish all of these items, Plaintiffs ask that this Court confirm Defendant's obligation to reimburse Plaintiffs for all expenses associated with selecting, retaining, and paying contractors of Plaintiffs' selection to accomplish all of these items.

39.     In either approach, and in light of the fact that Defendant has never provided an explanation of how a structure built in 2012 suffered sudden, loud, dramatic, and displacing foundation cracks approximately five years later, Plaintiffs ask that this Court require Defendant to provide a 10-year extended, assignable structural warranty at Defendant's sole cost to protect Plaintiffs from any further damage to the foundation and associated damage to the remainder of the house.

### Count I:  Breach of Contract

40.     All previous paragraphs are incorporated as though recited here.

41.     Various failures of Defendant to deliver the contracted-for- and separately-paid-for construction and equipment have been identified above, and the refusal of Defendant to deliver the construction and equipment for which the Plaintiffs contracted has caused the Plaintiffs to incur substantial damage to person and property, including lost value.

### Count II:  Breach of Warranty

42.     All previous paragraphs are incorporated as though recited here.

43.     Pursuant to the provisions of the limited warranty included in the Purchase Agreement, various defects and deficiencies have been identified above, and the non-compliant refusal of Defendant to remedy those defects and deficiencies has caused the Plaintiffs to incur substantial damage to person and property.

### Count III:  Negligence

44.     All previous paragraphs are incorporated as though recited here.

45.     The various deficiencies have been identified above, and Defendant had a duty to delivery to the Plaintiffs a construction free of whatever circumstances causes the sudden partial failure in the foundation (Defendant's expert never having identified the underlying cause of the

sudden partial failure in a nearly-5-year-old construction), damaged, mishandled, wrongly located and wrongly installed sliders, and damaged wall board.

46. The actual conditions were clear breaches of Defendant's duty, those breaches directly caused the damage suffered by the Plaintiffs.

### Count IV:  Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

47. All previous paragraphs are incorporated as though recited here.

48. Defendant engaged in deceptive and dishonest practices and conduct sufficient to establish liability under the Unfair Trade Practices and Consumer Protection Law, P.S. §201-1 – 201-9.2.

49. Defendant, through its authorized agents, offered upgrades for which it charged Plaintiffs, but failed to install the upgraded selections, and the Plaintiffs reasonably relied upon those representations, violating 73 P.S. §201-2(4)(vii – particular quality or model) and (xxi – other fraudulent and deceptive practices).

50. Defendant, by failing investigate and address the cause of the sudden partial failure of the foundation wall, concealing the damage from truss uplift without addressing the cause, failing to remediate damage caused by the incorrect roof drainage, apparently installing damaged wallboard in the bathrooms, and failing to remediate the separation of the utility meter from the house, violated the Plaintiffs reasonable expectation of a safe, useable construction, violating 73 P.S. §201-2(4)(vi – deteriorated condition).

51. Defendant, by failing to fulfill the warranty provisions with regard to both the installation and performance of the windows and the protection of the Plaintiffs' access to the Ply

Gem warranty, violated 73 P.S. §201-2(4)(vi – deteriorated condition) and (xiv – failure to comply with warranty provisions).

52. Defendant had knowledge of the issues and the defects.

53. These knowing and intentional acts resulted in damages.

54. Pursuant to the Unfair Trade Practices and Consumer Protection Law, the court has the discretion to assess punitive damages and to award attorney's fees, and Plaintiffs request that this Court utilize that discretion for its intended purposes: to make Plaintiffs whole and to incentivize Defendant and others to cease these unfair trade practices.

55. WHEREFORE, in light of these construction defects and deficiencies and Defendant's consistent failure/refusal to honor its warranty, Plaintiffs Jay and Sabina Conzemius request that this Court direct Defendant correct the deficiencies and establish a deadline, reimburse Plaintiffs for an independent inspector of their choosing.

56. Alternatively, if Defendant does not wish to accomplish all of these items, Plaintiffs ask that this Court confirm Defendant's obligation to reimburse Plaintiffs for all expenses associated with selecting, retaining, and paying contractors of Plaintiffs' selection to accomplish all of these items.

57. In either approach, Plaintiffs ask that this Court require Defendant to provide a 10-year extended, assignable structural warranty at Defendant's sole cost and pay to Plaintiffs such punitive damages and attorney's fees as the Court sees fit.

Respectfully submitted,

*/s/ Rebecca A. Bowman*

Rebecca A. Bowman, Esq., P.E.
114 Aston Court, McMurray, PA 15317-2745
724-941-1532, RBowmanEsq@aol.com

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| JAY AND SABINA CONZEMIUS<br>335 Rocky Ridge Road, BP, PA 15102<br>　　　　　Plaintiffs,<br>　　v.<br>NVR, INC. d/b/a RYAN HOMES<br>100 Ryan Court, PGH, PA 15205<br>(per fictitious name registration)<br>　　　　　Defendant. | CIVIL DIVISION<br><br>No. 2024-5215<br><br><br><br>**COMPLAINT** |

### CERTIFICATE OF SERVICE

I, Rebecca A. Bowman, Esq., P.E., hereby certify that a true and correct copy of the foregoing Complaint was served upon the Defendant, NVR, Inc., through its representative at the following address by electronic mail on this 4th day of December 2024.

　　　　　Attorney Kathleen Gallagher
　　　　　kag@gallagherlawllc.com

　　　　　Rebecca A. Bowman, Esq., P.E., D.F.E.
　　　　　Counsel for Plaintiff.

### CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

　　　　　Rebecca A. Bowman, Esq., P.E., D.F.E.
　　　　　Counsel for Plaintiff
　　　　　PA Id #47729